In re accounting of WILLIAM BAYLEY, administrator of Mary E. Bayley, deceased.

[Filed November 14th, 1904.]

1. An administrator of his mother, who had died intestate, leaving a husband and three children surviving her, included in his inventory of her estate twenty-one shares of the stock of a company, at its par value of $50 per share. He filed an account, charging himself with the inventory and praying allowance for the par value of the stock as transferred to the three children. He afterwards filed an amended account, by which he prayed allowance for the stock as erroneously inventoried as the property of the deceased. Exceptions to both accounts were filed by the husband, questioning the right of the administrator to the allowance thus asked and claiming that he should be charged in his account with the stock at its real value.—*Held*, that upon the inventory and account the burden of establishing that the stock was not part of the estate of the intestate was upon the administrator.

2. The administrator did not present sufficient proof of a gift from the intestate to her three children which he claimed, the proofs showing neither *donatio mortis causa* nor a gift *inter vivos*, but rather an attempted testamentary disposition, ineffective because not made by will.

3. The administrator claimed that the husband was estopped from setting up his claim to an accounting for the stock, because he knew that the administrator had transferred it to his sister, brother and himself, and remained silent as to his claim. He had been informed by the administrator that the intestate had given the stock to her three children.—*Held*, that in the absence of proof that the husband knew of the facts on which such gift was claimed, or of circumstances which put him on inquiry in respect thereto, an estoppel was not made out.

On appeal from the Essex county orphans court.

*Messrs. Howe & Davis*, for the appellant.

*Mr. Jerome D. Gedney* and *Mr. Frank H. Sommer*, for the respondent.

MAGIE, ORDINARY.

Mary E. Bayley died in Essex county, November 24th, 1894, leaving her surviving her husband, Joseph Bayley, and three

children, viz., William, Sarah and Joseph, Jr. William Bayley was appointed administrator of his mother's estate, and on April 14th, 1902, he filed an inventory of the personal property of the deceased and presented an account for allowance.

The surviving husband of deceased filed exceptions, both to the inventory and account.

In January, 1903, the administrator presented an amended account, to which the same party filed exceptions.

The exceptions, after a number of continuances, were brought to hearing before the orphans court, and testimony was taken thereon in open court, and on January 9th, 1904, the court made a decree allowing some of the exceptions and restating the account so as to charge the administrator with the balance of $6,594.66, and directing that the same should be distributed and paid over to the surviving husband of the intestate.

The administrator has appealed from the decree and all its parts, but the argument here has been directed only to one of the questions raised by the exceptions.

That question relates to the twenty-one shares of stock of the Pennsylvania Coal Company, of the par value of $50 each, which the administrator inventoried as part of the estate of deceased and as of the value of $1,050. There was an exception to the inventory in respect to the valuation given to those shares, and, in passing, it may be said that the evidence makes it clear that they were worth very much more than par. In the account first presented, accountant charged himself with the par value of those shares, and prayed allowance, as the case shows, for fourteen shares thereof as of the value at par, and as transferred, seven shares to his sister, Sarah, and seven shares to himself. In the amended account, the administrator charged himself with the inventory, but prayed allowance for the twenty-one shares of stock at its par value, as "erroneously stated in inventory as the property of said Mary E. Bayley." The exceptions challenged this allowance, and presented the question whether the ownership of the shares was in Mary E. Bayley at the time of her death, so as to require her administrator to account for the same. That is the question argued.

Since the administrator had inventoried these shares of stock

as part of the estate of deceased, the court below correctly held that the burden of establishing the fact that they did not belong to her at her decease was cast upon him, and that he was not entitled to the allowance prayed by his amended account except upon satisfactory proof of that fact.

The court below, upon the evidence, reached the conclusion that the administrator had not established the fact that the shares of stock in question were not the property of the deceased at the time of her death. The administrator claimed that they had been the subject of a gift by deceased, in her lifetime, to her three children, in equal portions. But the court correctly held that the evidence did not make out either a *donatio mortis causa* or a gift *inter vivos,* but rather disclosed an intent on the part of the deceased to make disposition thereof at her death, which failed to become effective because not made in writing and with the formalities required. The opinion rendered in that court reviews the evidence with care, and reaches the conclusion indicated on grounds which I deem entirely support it.

The result thus reached settles (1) that the administrator was bound to include in his inventory and account the twenty-one shares of stock at their real value, and (2) that he cannot be discharged from accounting therefor, as administrator of the intestate, except upon other grounds. But it was claimed below, and it is strenuously insisted here, that the orphans court erred in making a decree requiring him to account for the value of the stock to the respondent. This is, perhaps, rather aimed at the part of the decree which directed distribution of the whole estate upon such accounting to respondent.

The ground of this claim, as presented, is the conduct of respondent disclosed by the evidence. The facts presented by the evidence are these: The administrator testified that shortly after his mother's death respondent asked him about the Pennsylvania Coal Company's stock, and that he replied to him that his "mother had given it to us three children, to have seven shares each, and I was appointed to see that it was transferred on the books of the company, and I was going to do so." Shortly afterward the administrator did transfer, on the books of the company, seven shares to each child, including himself. Re-

spondent knew of this transfer then or afterwards. Subsequently an offer to buy these shares was made by a circular that offered terms which would amount to $365 for each share. Respondent knew of the offer, but it does not appear that he expressly advised or counseled a sale. But the sale was made, to his knowledge, and each child received the offered amount for each share of the stock. Respondent expressed his gratification at the price obtained.

Upon these facts it is contended that there arose an estoppel by respondent'e conduct. This is claimed, not so much upon any act of respondent, but rather upon his silence and acquiescence in the transfer of the stock by the administrator to his sister and brother, without asserting any right in himself as entitled to his wife's personal property. This reticence of respondent and his apparent acquiescence, it is urged, induced appellant to make the transfers, for which he had no compensation, and so to deprive himself of all power to account for the stock except out of his own funds.

If the evidence disclosed that the respondent, during the period in question, had been informed of what had occurred when the intestate was claimed to have made a gift of the shares to her three children, it may be that his conduct might be considered. But that conduct must affect him, if at all, by reason of some knowledge of a right to the stock in him, or at least there must appear circumstances from which he was charged with a duty of inquiry in respect thereto. Knowledge or duty to inquire, whereby knowledge would have been acquired, is essential to an estoppel of the kind claimed. *Big. Estop. 528; Mutual Life Insurance Co.* v. *Norris, 31 N. J. Eq.* (*4 Stew.*) *583; Baldwin* v. *Richman, 9 N. J. Eq.* (*1 Stock.*) *394; Richman* v. *Baldwin, 21 N. J. Law* (*1 Zab.*) *403.* Where both parties have equal opportunities of knowledge, and both act in ignorance of the real state of the case, such an estoppel will not arise. *Mutual Life Insurance Co.* v. *Norris, ubi supra.*

I have searched the evidence in vain to discover that respondent knew the facts on which a gift of the stock by the intestate to her children was claimed. Nor can I discover anything to put him on inquiry. He was doubtless charged with knowledge

that, as husband of an intestate wife, he was entitled to her personal estate, after payment of debts and expenses of administration. But he was also charged with knowledge that his wife, in her lifetime, could give away her personal estate so as to exclude his rights. When he was notified by his son that his wife had given the stock to her children, his acceptance of the information as true, and his failure to inquire further, will not, in my judgment, raise an estoppel, at least until he has acquired knowledge of the real facts.

It appears, by the proofs that family dissensions afterward arose, and respondent consulted counsel. I judge that he had then acquired knowledge of the facts, and he was advised by counsel that they did not establish a gift to the children of the stock. Thereupon the daughter surrendered to him what she had acquired by the sale of her seven shares. To that extent the distribution has been effected, and the decree below only charges the accountant with the value of the fourteen shares. Very shortly after the ascertainment of the facts respondent asserted his rights as husband.

The result is that respondent is not estopped from such assertion. This was the conclusion reached by the orphans court. and neither ground asserted for reversal prevailing, it must be affirmed.

By the decree below the costs of the contest were imposed upon the fund, and as the question presented is novel, I think the affirmance should be without costs of this court.